OPINION
By BARNES, J.
The above-entitled cause is now being determined as an error proceeding by reason of defendants’ appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.
Prior to February 1, 1937, the plaintiff, Leon K. Rowley, was a Civil Service employee in the office of the Auditor of State as assistant examiner, Grade 1, Rate C, in the permanent classified Civil Service. On Saturday, January 30, 1937, a few weeks after the defendant Ferguson took office, plaintiff was orally notified by his superior that his services were terminated and that he need not return to work the following Monday.
No written order of removal was' served upon the plaintiff or charges of any kind preferred against him, and, of course, no opportunity given him to make or file any explanation, and no order of removal was filed with the Civil Service Commission.
At the time of plaintiff Rowley’s discharge the Auditor of State acted under a misapprehension of fact that Rowley was a provisional appointee and therefore subject to dismissal at will without notice or preferring of charges. Prior to that time all state officers and departments for a number of years had construed the Civil Service Law as permitting the discharge of provisional appointees without notice or preferment of charges.
Some two years later, the Supreme Court of Ohio, in the case of State, ex rel. Slovensky v Taylor, 135 Oh St 601, definitely determined that a provisional employee of the state enjoys the same security of tenure, with certain exceptions, as does one appointed from an eligible list after competitive Civil Service examination. In other words, the effect of this ruling was to require the same procedure in the discharge of a provisional appointee as a regular Civil Service appointee, which, of course, was contrary to the administrative practice which had existed since the adoption of the Civil Service amendment in 1912.
Within a very few days the State Auditor’s office discovered that plaintiff Rowley was not a provisional appointee, but, on the contrary, held his position as a regular Civil Service appointee. Under the above situation, it therefore appears that the State Auditor by causing Rowley . to be discharged acted in the first instance under a misapprehension of fact, and by reason of the Supreme Court’s decision two years later likewise acted under an improper construction of the law. However, it may properly be said that defendant Ferguson personally made the contention that plaintiff Rowley’s position as assistant examiner was one involving a confidential position of trust and outside the power of the Civil Service Commission to classi•fy. This latter claim is not support *533 ed by defendants’ counsel (the Attorney General’s Office), and we might say further that there is nothing “in the record through which such conclusion might be arrived at.
On February 1, 1937, plaintiff appeared at the office of the Auditor of State, contacted the office manager and advised him that he was a regular Civil Service appointee, and therefore was not legally discharged. It appears that at this conference he was told that investigation would be made and reported to the Auditor, Mr. Ferguson, and for plaintiff to return in a few days. The office manager did make his investigation and interviewed Auditor Ferguson, and the latter ordered Rowley’s reinstatement.
On or about February 3, Rowley returned and again contacted the office manager. He was then advised that he would be put to work in the main office at the desk of a Miss Phipps, the latter having resigned her position. There is a marked conflict between plaintiff Rowley and the office manager as to just what was said in this conversation, Rowley contending that he was offered Miss Phipps’ position, who was in a different classification and at a reduced salary, with the understanding that he should resign within three months.
Mr. Mason E. Hayhurst, the office manager, stated that he was to take the desk of Miss Phipps, •do the work that she had been •doing and in addition auditing and classifying and filing all state "building contracts except highways, but he was to continue at the same pay and denied that anything was said about the termination of his services, other than that this particular work would require about three months, after which there would be a reassignment. Mr. Hayhurst further testified at that time he thought that the salary of plaintiff Rowley and that of Miss Phipps were the same, $150.00 a month or $1800.00 a year. The fact was that plaintiff Rowley’s salary was $6.50 a day, and it is agreed that had he worked every day this would mean $2002.00 per year.
Following this last conversation, plaintiff Rowley did not again see the office manager, Auditor Ferguson or any attache in the office relative to his accepting or rejecting the position offered. Some eight months later he did write letters to Auditor Ferguson, as did his attorney, calling attention to his illegal discharge and that accumulated salary was due him to the time of writing the letters.
The Auditor’s office did not answer any of these letters, taking the position that since plaintiff Rowley failed to return to work within a reasonable time he thereby in law voluntarily severed his connection from his former employment and retained no status demanding consideration.
On January 17, 1938, plaintiff Rowley filed a mandamus action in the County Clerk’s office in Columbus, Ohio, in the Court of Appeals, against the State Auditor, seeking a mandatory writ restoring him to his former position in the State Auditor’s office. On the filing of the petition, a temporary writ was issued. The defendant Ferguson, as Auditor of State, filed an answer in which certain admissions were made, and in addition, affirmative defenses as follows:
1. That plaintiff’s position as assistant examiner has been abolished;
2. That the relator was dismissed by reason of the fact that he was a provisional appointee and not a classified service appointee.
3. That the position which *534 plaintiff formerly held with defendant was one of a confidential and fiduciary nature.
On May 29, 1939, this action in mandamus was decided by our court and the writ allowed, State, ex rel. Rowley v Ferguson, 29 Abs 640.
The action in the instant case was commenced September 18, 1939, through plaintiff’s filing a petition in the Common Pleas Court of Franklin County, Ohio.. By reason of sustaining motions and demurrers plaintiff filed amended petition, second amended petition and third amended petition.
While in the original petition Joseph T. Ferguson, individually, and as Auditor of State, was named as defendant, the case was finally submitted against Ferguson, individually, and his bondsmen.
The case came to trial before one of the regular Common Pleas Judges of Franklin County and a jury. A verdict was returned for the plaintiff in the full amount claimed.
On motion for new trial, the trial court ordered a remittitur in a small amount, which was accepted by the plaintiff. The motion for new trial was then overruled and judgment entered for $4935.20.
Within statutory time the defendants duly filed notice of appeal on questions of law and thereby lodged the case in our court.
Defendants’ assignment of errors is set out under six separately-numbered specifications.
At this point we want to compliment counsel for appellants in attempting to file index or skeleton brief, as per suggestion in our rules. However, we do criticize the listing of cited cases in alphabetical order rather than in order of importance, as suggested in our rules.
We now take up the assignment of errors in the same order as presented and discussed in briefs.
FIRST ASSIGNMENT:
“1. The trial court erred in overruling defendants’ motion for judgment notwithstanding the. verdict.”
In substance it is the claim of appellants that Joseph T. Ferguson may not be held to respond in' damages in a tort action such as this, for official acts performed as State Auditor, even though the act was performed under a mistake of fact or a mistake of law.
This is a new question in Ohio. No Ohio cases have been cited, nor do we find any, where an official has been sued individually, involving misconduct in an official action.
Counsel for appellants reasons-that Ferguson, as State Auditor, had the right to remove the plaintiff Rowley and therefore had jurisdiction; that having jurisdiction to remove, he exercised a discretion and that courts may not interfere-where there is jurisdiction and an exercise of discretion. We are unable to follow this reasoning.
Under the state of the record’ Ferguson, as Auditor of State, did not have jurisdiction to remove. The law definitely sets out certain requisite steps to be taken in order to give him jurisdiction, viz., complaint, notice, opportunity to be-heard, etc. None of these steps was taken, and consequently there was no- jurisdiction to remove. Furthermore, counsel is in error in urging-that courts will not interfere where there is an exercise of discretion. We do not think this question is involved, but even so it is universally held that courts may revoke orders for an abuse of discretion, for acts done in contravention of *535 law, or for the improper construction of the law.
Under certain conditions errors in finding's of fact or interpretation of law will not authorize civil action for recovery of damages. For instance, it is very generally held that courts are immune from civil action and damages. This is predicated upon the basis that in a proper proceeding courts may act and in the exercise of their judgment it would be improper to 'urge that such court was civilly liable in damages because a reviewing court may have reversed. However, let us assume that a court having jurisdiction to try civil and criminal cases, should call an individual before him and, without indictment, affidavit or information, proceed to sentence and commit such individual to imprisonment for a claimed violation of law. Under such a situation, if it ever happened, we are inclined to think that such court would be individually liable for malfeasance in office.
The fact that the court is given jurisdiction to act in civil and criminal matters, implies that such jurisdiction will be invoked by the filing of proper pleadings. It is likewise universally held that where executive or administrative officers perform quasi judicial acts they may not be required to respond in damages for errors of judgment, mistake of fact or misconstruction of law. Generally, the broad statement may be made that where any official has jurisdiction to act relative to any subject matter, liability in damages will not attach, even though improper motives may be present.
Counsel for plaintiff devotes considerable space to citation of authorities in support of his argument that the defendant Ferguson in discharging plaintiff Rowley acted in his official capacity. Counsel for appellee admits this and we have no difficulty in following the theory of both counsel.
Contrary to' appellants’ argument we determine that this is a case in which a public officer acted outside the scope of his jurisdiction and authority.
We have no quarrel with State, ex rel. Atkinson, 138 Oh St, 217. In the cited ease the Supreme Court held that the action of the appointing authority, concurred in by the Civil Service Commission, was proper. This cannot be given application in the instant case for the reason that it is now conceded that the action of the State Audi- or in removing Rowley was improper.
Appellants also refer to the case of Cleveland v Luttner, 92 Oh St 493. In this case Luttner was improperly discharged from his civil service position, and bringing his action against the city recovered a judgment, which was sustained by the Supreme Court. It is urged that since the Supreme Court sustained an action against the sovereign, that inferentially it is held that an action cannot be maintained against an officer in his individual capacity. It is further urged that the fact that the State of Ohio cannot be sued will' not place a liability upon some other person, in this case, the Auditor of State. We are unable to follow this reasoning.
Counsel for appellee also refers to the decisions in other jurisdictions. The first case cited and tfce one given most attention is that of Cooper v O’Connor, et al. (United States Court of Appeals, District of Columbia), 99 Federal, 2d 135. This was an action for malicious prosecution, brought against officers and employees of the United States in their individual capacities, charging them with malicious *536 Iy instigating criminal action against the plaintiff. The complaint in substance charged that the defendants maliciously and without probable cause appeared before a Grand Jury of the District of Columbia and caused indictments to be returned against the plaintiff. Demurrer was filed to the petition and sustained and thereby the question of individual liability for official acts was involved. The court reviewed the official status of the defendants and pointed out that the acts complained of were within their official duties and even though they may have been actuated by malice, an action of this character would not lie. At page 137 of the opinion we find the following:
“There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is neverthless liable in a civil action and can not claim the immunity of the sovereign. There is also a general rule that if any officer— ministerial or otherwise — acts outside the scope of his jurisdiction and without authorization of law, he is liable in an action for damages for injuries suffered by a citizen as a result thereof. See Bradley v Fisher, 13 Wall, 335, 351-352, 20 L. Ed., 646. On the contrary, if the act complained of was done within the scope of the officer’s duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law. This rule of immunity was first applied and has been most universally-observed in the case of judges, presumably because considerations of public policy operate most strongly in their favor. But even as to them the rule does not operate in cases in which they act. without jurisdiction over the subject-matter. Bradley v Fisher, supra, at page 351. The first question to be decided, therefore, is whether the acts complained of in the present case come within the general scope of the duties of the several appellees.”
We are also referred to the following cases:
Lang v Wood, 92 Fed. 2d, 211;
Spalding v Vilas, 161 U. S. 483;
Yaselli v Goff, 12 Fed. 2d, 396;
Dearmand v Sinsworth, 24 App., D. C. 167;
Farr v Valentine, 38 App., D. C. 418;
Brown v Randolph, 25 Fed., 2d, 546;
Mellon v Brewer, 18 Fed. 2d, 168.
We have examined all the above-cases except those cited from App., D. C. These volumes are not available to us at this time. All of the above cases are readily distinguished from the instant case.
Counsel for appellee refers to the case of Stiles v Morse, 233 Mass., 174 (123 N. E., 615). Also McGrew v Gresser, 226 N. Y. 57 (123 N. E. 84).
Both cases are on all fours with-the instant case, and support an-action of this character. In both cases the complainant was dismissed from a Civil Service position without charges, notice or hearing. Both the New York and Massachusetts courts held that the officer discharging the employee could properly be held for damages in his individual capacity.
We are constrained to the view that appellants’ first assignment of error is not well taken.
*537 SECOND ASSIGNMENT:
“2. The trial court erred in admitting exhibits offered by plaintiff.”
The exhibits offered are many in number and the early ones, 1 to 23, inclusive, were very strenuously objected to by counsel for appellants and the record fully preserved.
However, counsel for appellants in their brief only refer to Exhibits 10, 14, 15, 21, 22, 23 and 31, and it is argued that the admission of these exhibits over defendants’ objection constitutes prejudicial error.
All of the above exhibits, with the exception of 31, were introduced in evidence and read to the jury during the presentation of plaintiff’s case in chief. Plaintiff’s exhibits Nos. 10, 14 and 15 were letters written by plaintiff’s attorney, Exhibit No. 10 being a letter written by Mr. Goldman, attorney for plaintiff, addressed to Joseph T. Ferguson, Auditor of State, dated November 6, 1937, and all relating to the controversy between Mr. Rowley and Auditor Ferguson. We have no difficulty in determining that this exhibit was improperly admitted in evidence. It certainly was no part of plaintiff’s case in chief. It was read at the time plaintiff Rowley was on the stand, he being the first witness called on his own behalf. The letter was in substance a narrative of Mr. Rowley’s claim, a criticism of Auditor Ferguson’s position and an argument as to infirmities in Auditor Ferguson's claimed contention, winding up with a threat to bring action.
Exhibits 14 and 15 were letters written by Mr. Goldman, as attorney for plaintiff, addressed to the Attorney General’s office, Columbus, Ohio, under dates of March 25, 1939, and May 17, 1939. Both letters were critical of Mr. Ferguson, that he had no substantial defense, suggesting that Mr. Rowley be reinstated and thus save accumulation of salary claimed, etc. We are unable to see how these letters could be competent under any situation, either in chief or in rebuttal.
Exhibits 20 and 22 were letters from the Attorney General to Auditor Ferguson. These letters were dated June 27, 1939, and June 8, 1939. Both letters were subsequent to the decision of our court in the mandamus action. Both refer to the subject of appealing our decision to the Supreme Court. In these letters the Attorney Gener-jl expressed their agreement with our position in the mandamus action and advised against an appeal. Furthermore, the suggestion was made that if the Auditor desired to appeal, he would have to secure an attorney of his own selection. From these letters an inference could arise that- Auditor Ferguson was unwilling to take the advice of his attorney, the Attorney General.
The presentation in evidence of these exhibits was improper. First and foremost, they were confidential communications between attorney and client. The fact that both attorney and client were public officials would make no difference. Counsel for plaintiff argues that this evidence was competent for the reason that in his trial statement to the jury he said that Auditor Ferguson wanted to appeal the mandamus action to the Supreme Court against the suggestion and advice of the Attorney General, but in the Attorney General’s trial statement he denies this. In the first place, we might say that the statement of counsel for plaintiff to the jury was improper, and further that the de *538 nial thereof by the Attorney General would not make it competent as evidence in chief. It is true that the trial court made the statement to the jury that all of these exhibits were only for the purpose of disclosing what had been done, and that they should not be considered as evidence of the truth of any statement made therein. We do not think that this would cure the error.
Exhibit 23 was a letter written from the Civil Service Commission to Auditor Ferguson, under date of March 20, 1937, relative to the Civil Service status of Mr. Rowley, and might bear the interpretation that there was a controversy between the Commission and Auditor Ferguson as to certain steps that he had taken. We find nothing in the record that makes this exhibit admissible in evidence. We are unable to find that it has any bearing upon any issue in the case. Any construction that the Civil Service Commission might give to- the Civil Service law would not be competent to be introduced in evidence.
Plaintiff’s Exhibit No. 31 was a copy of a letter written by Mr. Goldman, as attorney for plaintiff Rowley, to John P. Walsh, Assistant Attorney General, dated May 4, 1939. The import of this letter was to suggest settlement of back salary and reinstatement of Mr. Rowley, and asking that if there was any possibility of settling, immediate action be taken before writing brief in the mandamus action. This letter was improperly admitted in evidence.
Many of the other exhibits were improperly admitted, but as this time we make no specific reference thereto, since counsel for appellants make no reference to them in their brief and we thereby understand that they do not contend that they are prejudicially erroneous. However, if the case is retried, careful consideration should be given to the exhibits since we would not want it understood on a subsequent trial that we are giving sanction to all other exhibits. Neither would we say that if offered at the proper time under proper basis, they may not properly be admitted.
We arrive at the conclusion that the exhibits specifically mentioned were improperly admitted in evidence and their admission would constitute prejudicial error.
In our judgment they would have an improper effect on the jury during the consideration of other vital issues.
THIRD ASSIGNMENT:
“3. The trial court erred in giving special requests by plaintiff and in failing to- give special charges requested by defendant.”
At the close of the trial and before argument, counsel for appellees presented in writing eight separately numbered requests for charge. All were given as requested, except No. 8. Counsel for the defendant objected to the giving of these special requests.
On behalf of the defendant Ferguson and the Bonding Companies, counsel presented in writing three separately numbered special requests.
No. 1 was given and Nos. 2 and 3 refused. Exceptions were saved to such refusal.
Under this' assignment of error counsel for appellants in their brief maintain that the court committed prejudicial error in giving plaintiff’s special requests Nos. 1, 2 and 3, and in refusing to give defendant’s requests Nos. 2 and 3.
Appellants’ objections to plaintiff’s special request No. 1 are based *539 upon the same theory as heretofore discussed under appellants’ assignment of error No. 1. This special request is rather lengthy and we do- not deem it necessary to copy it in this opinion. Suffice it to say that we have carefully considered it in the light of the briefs and do not find any error in the giving of this special request.
Special request No. 2 reads as follows:
“No. 2. I charge you that your verdict in this case should be for the plaintiff in an amount arrived at by taking the number of working days from which plaintiff was excluded from his position and applying the same at the rate of $6.50 per day and subtracting from that total such amount as you may find that plaintiff earned on the outside during the period he was wrongfully excluded from, his position, together with interest at the rate of six per cent, per annum mi the amounts plaintiff would have received had he not been wrongfully dismissed, from the respective dates he would have received such payments. The interest being calculated to date.”
This special request is an incorrect statement of the law in two particulars. No doubt the trial court had in mind that the evidence unqualifiedly supported the plaintiff’s iclaim that he was illegally discharged, and therefore would be entitled to recover for the two or three days that he was dismissed from the service, even though it should be found that the defendant proffered to reinstate him on or about the 3rd of February, 1937. This conclusion would be correct except for the fact that plaintiff’s admitted earnings duing the entire period were in excess of any amount that might be allowed plaintiff for the two or three days' he was illegally severed from his employment.
It was also error for the Court to limit the amount of deductions to what the plaintiff earned on the outside during the period he was wrongfully excluded from his position. There should have been added as a deduction any amount that he might have earned through the exercise of reasonable care and diligence. 13 O. Jur., p. 79, §19.
That this special charge was incorrect in the above particular, was specifically recognized by counsel for plaintiff and the trial court. At the close of the court’s general charge and before the jury retired, counsel for defendant Ferguson suggested to the court that there should be incorporated in his general charge on the question of deductions not only the salary that plaintiff had earned, but in addition such as he might have earned through the exercise of due diligence and prudence.
Counsel for plaintiff-appellee consented that this additional instruction might be given, and the court so- instructed the jury. Under the well recognized rule where there are conflicting instructions, and particularly when a special instruction incorrectly stated the law, the error will not be cured by the court in his general charge giving the correct statement. However, in the instant case interrogatories were submitted to the jury, prepared by counsel for defendant.
No. 5 was as follows:
“How much do you find plaintiff Rowley could have earned by exercising due diligence between February 3, 1939, and June 23, Í939?”
The jury answered this interrogatory, signed by all twelve members, as follows:
*540 “We find that aforesaid amount on previous page is what he could have earned by exercising due diligence between these dates.”
The previous page referred to by the jury was Interrogatory No. 4, which reads as follows:
“How much do you find plaintiff Rowley earned between February 3 and June 3, 1939?”
“Answer: $900.00.”
We determine that the answer to Interrogatories Nos. 4 and 5 cures the above defect in special request No. 2.
This special instruction is also erroneous in that it ordered the jury to return interest at six per cent.
Admittedly, the instant action is one in tort. In tort actions it is universally held that interest is not recoverable as a matter of right. It is proper for the court to charge the jury that they may award interest as an element of damages. Counsel for plaintiff-appellee argues plausibly that under the facts in the instant case there should be promulgated an exception to the general rule. It is pointed out that the plaintiff Rowley was deprived of his salary, which was a fixed amount, payable at times certain, and that this constituted specific damages and that interest thereon should be allowed. This would be a very persuasive argument to the jury and possibly unanswerable, but the law is well defined that interest is not allowed as a matter of right in tort actions.
Volume 23, Ohio Jurisprudence, (Interest) §8, p. 12;
Volume 39, Ohio Jurisprudence, (Torts), §54, p. 255;
Volume 17, Corpus Juris, 822;
Lincoln v Claflin, (U. S. Supreme Court), 19 L. Ed. 106.
Special request No. 3, which was objected to, in effect charges the jury that the decision of our Court of Appeals in the mandamus action settled all matters in this case except the amount which plaintiff is entitled to recover “on which subject the court will hereafter charge you.”
This instruction is a little too broad, in view of the issues presented through the answer of the defendant. However, we are not inclined to hold that the giving of this charge constituted prejudicial error. A more correct statement was made by the court in giving defendants’ special request No. 1, which reads as follows:
“No. 1. The court charges you that in issuing the writ of mandamus, the Court of Appeals decided only that plaintiff Rowley was entitled to reinstatement to his position and that the judgment of the Court of Appeals did not, as a matter of law, determine that plaintiff was entitled to damages.”
FOURTH ASSIGNMENT:
“4. The trial court was in error in not giving special charges requested by the defendants.”
Defendants’ special requests Nos. 2 and 3 read as follows:
“2. If you should find that the position which was offered to plaintiff by the defendant embraced duties permitted by his Civil Service classification and carried no reduction of pay, I charge you that you must find that the plaintiff is not entitled to any damages for loss of pay subsequent to that date on which he was offered the position.
“3. An employee who is wrongfully discharged is required by *541 law to use diligent effort to obtain like employment and I, therefore, charge you that if you should find that the employment offered plaintiff by the defendant was substantially similar to that from which he was discharged, any salary that plaintiff would have earned, had he accepted such employment, must be credited to the defendant.”
These special requests were objected to upon the ground that they did not cover the question of “tenure”. The trial court offered to give them as requested, if amended in this particular. The suggestion was declined. Pertinent to this question we find that plaintiff in his testimony gave as his principal reason for declining the proffered service, that it was with the understanding that he was to resign in three months. We would have no difficulty in holding that if that be the fact, plaintiff would be justified in not accepting the employment. Of course, this was a disputed question. Any request to charge must embrace all material factual questions pertaining to the subject.
We determine that the court was warranted in declining to give the special requests as presented.
To summarize our discussion of Assignments of Error Nos. 3 and 4, we find no prejudicial error except the direction by the court that the jury should allow and determine interest at the rate of 6%.
FIFTH ASSIGNMENT:
“5. Misconduct of counsel for plaintiff.”
This claimed misconduct is presented in the record as follows: Following the general charge of the court and while counsel for plaintiff was arguing to the jury, he produced a number of sheets of paper, upon which he had made calculations of interest on what would have been the several monthly payments of salary, and proceeded to hand these sheets of paper, with the calculations thereon, to the jurors. After be had distributed the same to two of the jurors, counsel for defendants objected and asked to see the papers, which he desired to distribute to the jurors. Counsel and the court examined them. It was argued by counsel for plaintiff that the calculation of interest involved a lot of work, and that he had taken the time to make the detailed calculations. He argued further that he might go to a blackboard and make the calculations, so that the jury could see and follow it and thereby determine the correctness of his calculations. He stated that this would shorten the operation and he was not presenting the sheets of paper as evidence, but only as a part of his argument and as an aid to the jury. The court overruled defendants’ objections and permitted the duplicate sheets, twelve in number, to be distributed to all twelve of the jury. They had them for a time and kept them during the noon recess. When court reconvened following the noon hour, the jurors were inquired of if they had examined these papers, and then the court requested that they all be returned, which was done. The claim was made by affidavit that one'juror made copy of some totals before returning the papers. Counsel for defendants-appellants point out that the jurors’ verdict as returned was identical with the calculations as made by counsel for the plaintiff. It is further disclosed by the record that the calculations were in fact incorrect and on the mo *542 tion for new trial the court ordered a remittitur in the sum of $256.15 to cover the incorrect calculations.
We think this was improper practice, although it may or may not be prejudicial under varying conditions.
If the plaintiff is entitled to interest as a matter of law, there would be no prejudicial error, unless it be shown that the total of the judgment would disclose an excess in interest. However, -in the discussion of Assignment of Error No. 3, we have given our views on the question of interest.
ASSIGNMENT NO. 6:
“6. The amount of the verdict and the judgment rendered thereon are against the manifest weight of the evidence and excessive.”
We would not determine as a matter of law that the verdict and judgment were against the manifest weight of the evidence or excessive. However, as heretofore stated, we do find that the court committed prejudicial error in admitting in evidence certain exhibits, which are referred to in our discussion of the Second Assignment of Error. We think that the admission of this evidence was prejudicial and may have had an effect on the jury in determining one of the very vital issues, viz., did the defendant Ferguson offer to reinstate the plaintiff in a similar position at the same salary without any express limitation as to his tenure.
If, as defendant contends, this offer of reinstatement was made without limitation or condition, then plaintiff would not be entitled to recover except for the two or three days elapsing between the time óf his written discharge and the claimed offer of reinstatement.
We also find under a former assignment that the court was in error in giving positive instructions to the jury to allow interest, whereas he should have instructed that it was within their discretion.
Finding prejudicial error, we reverse the judgment of the trial court and remand the case for new trial and further proceedings according to law. i
GEIGER, PJ., and HORNBECK, J., concur.